F I L E D
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

MAR 30 2005

## TENTH CIRCUIT

PATRICK FISHER
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TIMOTHY WALES,

Defendant - Appellant.

No. 04-8071

(D. Wyoming)

(D.C. No. 03-CR-170-J)

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR 2 5 2005
1·30 p.m
Betty A. Griess, Clerk
Cheyenne

## ORDER AND JUDGMENT*

Before **SEYMOUR**, **ANDERSON**, and **BRISCOE**, Circuit Judges.

Defendant/Appellant Timothy Wales was found guilty following a bench

trial of one count of attempting to entice a minor to engage in illegal sexual

activity, in violation of 18 U.S.C. § 2422(b), and one count of attempted child

sexual exploitation, in violation of 18 U.S.C. § 2251(a) and (d).  He was

sentenced to concurrent terms of 180 months on the first count (attempting to

entice) and 188 months on the second count (attempted child exploitation),

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

followed by a three-year term of supervised release. Wales was also fined $250 and given a special assessment of $100.

Wales challenges his conviction on the grounds that (1) the government produced insufficient evidence to support his conviction for attempt; and (2) even if there was sufficient evidence that he attempted to commit the crimes as charged, he abandoned or renunciated his criminal purpose. He does not challenge his sentence. We affirm his conviction.

## BACKGROUND

In the afternoon of December 14, 2002, Wyoming Division of Criminal Investigation ("DCI") Special Agent Flint Waters was in an Internet chat room using the name "angelgirl12yo" when he received a request to engage in a private "chat" with someone using the Internet name "caspercock." Agent Waters examined the Yahoo profile for "caspercock," which indicated that "caspercock" was a "single and good looking" "male" from Casper, Wyoming, and that his name was "Needs Sex." The profile further indicated that his hobbies were "doggie style, missionary, anal, oral, I Love it all. Any women wanna fuck." "Caspercock" listed his occupation as "Sex, sex, and more sex" and listed his interests as "Kinki Kids."

The initial private chat included the following exchanges:

-2-

```
caspercock (1:26:46 PM):  hello, enjoying yourself?
angelgirl12yo (1:26:53 PM):  its ok
angelgirl12yo (1:26:57 PM):  kinda quiet
caspercock (1:27:15 PM):  what you doing?
angelgirl12yo (1:27:26 PM):  just chattin
caspercock (1:27:49 PM):  cool,
caspercock (1:28:05 PM):  I like your name, got a pic?
angelgirl12yo (1:28:13 PM):  no sorry
caspercock (1:28:23 PM):  that's ok.
caspercock (1:28:28 PM):  u really 12?
angelgirl12yo (1:28:35 PM):  ya
caspercock (1:28:50 PM):  that's cool
caspercock (1:29:08 PM):  I've never chatted with someone 12 on
here.
angelgirl12yo (1:29:16 PM):  ok, nice meetin u tho
caspercock (1:29:24 PM):  nice meeting you too.
caspercock (1:29:30 PM):  I'm 21
```

Appellee's App. at 1.  During the chat, "caspercock" also activated a web camera

permitting Agent Waters to watch "caspercock" while he typed.

Approximately ten minutes into the chat between "caspercock" and Agent

Waters, the Agent received a request to chat privately with someone using the

Internet name "sassyangelgoddess."  The Yahoo profile for "sassyangelgoddess"

indicated that the Internet name belonged to "Shawna," who listed her age as

eighteen.  "Shawna" listed her hobbies as "I like to eat pussy, I'm really 14" and

her occupation as "Sex."  The profile included a photo which appeared to depict

an adolescent nude girl with her finger in her vagina.

Agent Waters then chatted with "caspercock" and "sassyangelgoddess"

simultaneously.  Because he could see "caspercock" on his web camera, Agent

Waters was able to determine that the same person was both "caspercock" and

"sassyangelgoddess." The continued chat session between "caspercock" and

"angelgirl12yo" included the following exchanges:

> caspercock (2:09:04 PM): I wanted to hear your voice, and I was
> thinking about letting you see me.
> angelgirl12yo (2:09:15 PM): ok but I am in cheyenne
> caspercock (2:09:49 PM): U ever seen a guy naked before?
> angelgirl12yo (2:10:15 PM): not all the way
> caspercock (2:10:27 PM): What's the most you've seen?
> angelgirl12yo (2:10:41 PM): well I saw a guys thing before
> caspercock (2:10:52 PM): cool.
> caspercock (2:11:03 PM): u wanna see mine?
> angelgirl12yo (2:11:09 PM): ok
> caspercock (2:11:46 PM): ok here it is.
> angelgirl12yo (2:11:58 PM): wild

Id. at 3-4. At this point, Wales exposed his penis on the web camera and

masturbated. The chat continued:

> caspercock (2:28:03 PM): I have never been with someone so young
> before
> angelgirl12yo (2:28:12 PM): ya? why me?
> caspercock (2:28:39 PM): you have a great personality
> angelgirl12yo (2:28:45 PM): thanks a lot, u r sweet
>
> * * * *
>
> caspercock (2:34:38 PM): I would do anything to get with you.
> angelgirl12yo (2:34:48 PM): ya, what all woud you wantta do?
> caspercock (2:35:13 PM): I'd wanna hold you close, and kiss you.
> angelgirl12yo (2:35:36 PM): ok
> caspercock (2:35:51 PM): Touch you, And make love to you.
> angelgirl12yo (2:36:01 PM): wow, u know I am a virgin right?
> caspercock (2:36:26 PM): That's ok. I would love to show you.
>
> * * * *

-4-

caspercock (2:41:42 PM):  You have a way to take any pictures?
angelgirl12yo (2:41:49 PM):  I got a instant camera
caspercock (2:42:03 PM):  cool
angelgirl12yo (2:42:05 PM):  my freidn has a scanner
caspercock (2:42:16 PM):  I'd love to get some of you.
caspercock (2:42:23 PM):  You wanna get wild?
angelgirl12yo (2:42:27 PM):  like how
caspercock (2:43:00 PM):  Take pictures of your pussy for me.
angelgirl12yo (2:43:09 PM):  rely? wow, what you gonna do with them
caspercock (2:43:23 PM):  And I'll send some back of mine
angelgirl12yo (2:43:34 PM):  of your thing?
caspercock (2:43:50 PM):  I'd probably use them to get off, untill I got down there with you.
angelgirl12yo (2:43:57 PM):  lol, wild
caspercock (2:43:59 PM):  yes
caspercock (2:44:12 PM):  that Idea turn u on?
angelgirl12yo (2:44:16 PM):  kinda
caspercock (2:45:05 PM):  Pictures of you fingering yourself
angelgirl12yo (2:45:30 PM):  tell u what, u send me pics of what you wanna see and I will try to make them like that
angelgirl12yo (2:46:05 PM):  I will have to go to carlas house for a while after to scan them and NO giving them to anyone
caspercock (2:46:05 PM):  I'll try to find some
angelgirl12yo (2:46:13 PM):  promise!
caspercock (2:46:15 PM):  ok

* * * *

caspercock (3:17:05 PM):  ok, there are 3 of them
angelgirl12yo (3:17:57 PM):  ok, wow, how old is she?
caspercock (3:18:13 PM):  17
angelgirl12yo (3:18:19 PM):  wild
angelgirl12yo (3:18:23 PM):  looks younger
angelgirl12yo (3:18:31 PM):  ok be back later
angelgirl12yo (3:18:38 PM):  she your gf?
caspercock (3:19:13 PM):  no, I don't have a g/f
angelgirl12yo (3:19:26 PM):  ok, you no her?
caspercock (3:19:51 PM):  just a friend of my adopted sister

> angelgirl12yo (3:20:19 PM):  ok, I wil be back on later if everything
> goes good, laters

Id. at 4-7.  At some point, Agent Waters received an email from the email address

caspercock202@yahoo.com, which included three photos, one depicting a close-

up of a vagina and two depicting a vagina with an object inserted into the vagina.

As indicated, while "caspercock" and "angelgirl12yo" were chatting,

"caspercock," using the Internet name "sassyangelgoddess," initiated a

simultaneous chat with "angelgirl12yo."  That chat included the following

exchanges:

> sassyangelgoddess (1:36:47 PM):  u ever had sex?
> angelgirl12yo (1:37:07 PM):  not all the way
> sassyangelgoddess (1:37:15 PM):  too bad.
> angelgirl12yo (1:37:19 PM):  y?
> sassyangelgoddess (1:37:34 PM):  It feels great
>
>                                        * * * *
>
> sassyangelgoddess (1:40:49 PM):  I know a guy who would love to
> let you go all the way.
> angelgirl12yo (1:41:00 PM):  realy? is he cool
> sassyangelgoddess (1:41:28 PM):  yeah, but he's older.
> angelgirl12yo (1:41:31 PM):  thats ok
> sassyangelgoddess (1:41:39 PM):  in his 20's.
> angelgirl12yo (1:41:42 PM):  wild
> sassyangelgoddess (1:41:51 PM):  very
> angelgirl12yo (1:41:57 PM):  where dos he live?
> sassyangelgoddess (1:42:29 PM):  Casper.
> angelgirl12yo (1:42:40 PM):  cool but I live in Cheyenne
>
>                                        * * * *

sassyangelgoddess (1:50:56 PM):  you have a cam?
angelgirl12yo (1:51:02 PM):  no wish I did
sassyangelgoddess (1:51:27 PM):  would u show him your puss
sassyangelgoddess (1:51:29 PM):  y if
sassyangelgoddess (1:51:32 PM):  you did?
angelgirl12yo (1:51:49 PM):  I gess but no cam, I got a poleroid camera tho
sassyangelgoddess (1:52:26 PM):  cool
angelgirl12yo (1:52:33 PM):  I had some wild pics some guy sent me but my mom broke the zip drive
sassyangelgoddess (1:52:39 PM):  do u have a scanner?
angelgirl12yo (1:52:50 PM):  no, my frend does
sassyangelgoddess (1:53:35 PM):  Cool, you need to take some pictures of you naked, and get them scanned on a disk.

* * * *

angelgirl12yo (1:54:13 PM):  don't have anyone to take the pics tho
sassyangelgoddess (1:54:40 PM):  do it in a mirror, or have a girlfriend dso it.
angelgirl12yo (1:54:56 PM):  ya rather have a guy do it u no? hard to ask someone
sassyangelgoddess (1:55:41 PM):  yeah
sassyangelgoddess (1:56:18 PM):  He have a cam?
angelgirl12yo (1:56:24 PM):  ya he is on it
sassyangelgoddess (1:56:43 PM):  have him show u his cock?
angelgirl12yo (1:56:55 PM):  I cant ask him that, gees

* * * *

angelgirl12yo (2:48:13 PM):  I think I am gonna do some pics for him
angelgirl12yo (2:48:19 PM):  do you think I shoud
sassyangelgoddess (2:48:33 PM):  yeah
angelgirl12yo (2:48:58 PM):  man, this is wild, can I add u?
sassyangelgoddess (2:49:02 PM):  don't the thought of some guy jerking off over you just make you wet?
angelgirl12yo (2:49:10 PM):  prety wild
angelgirl12yo (2:49:15 PM):  I bet you get that a lot huh
sassyangelgoddess (2:49:24 PM):  uh huh

angelgirl12yo (2:51:30 PM):  he is sending me what he wants me to do
sassyangelgoddess (2:52:49 PM):  u gonna do it?
angelgirl12yo (2:53:01 PM):  sure if its something cool
sassyangelgoddess (2:53:22 PM):  ok

\* \* \* \*

angelgirl12yo (2:54:58 PM):  your profile pic is pretty cool
sassyangelgoddess (2:55:47 PM):  Give him one like that
angelgirl12yo (2:56:21 PM):  I will try, not sure how to hold the cam tho
sassyangelgoddess (2:56:36 PM):  with one chatting
angelgirl12yo (2:58:09 PM):  hes leaving
angelgirl12yo (2:58:15 PM):  I must have been to forward
angelgirl12yo (2:59:19 PM):  he said he thinks hes falling in love, playa, lol
angelgirl12yo (3:00:14 PM):  ok got one good pic so far BUZZ!!!
angelgirl12yo (3:04:48 PM):  u there girl, got one good one taken, working on more
angelgirl12yo (3:05:31 PM):  hard to get the light right
sassyangelgoddess (3:06:07 PM):  that's ok
angelgirl12yo (3:06:12 PM):  they keep coming out dark
sassyangelgoddess (3:06:47 PM):  go in the bathroom
angelgirl12yo (3:06:59 PM):  good idea, I am waiting to see what he wants me to do then I will
sassyangelgoddess (3:10:18 PM):  just tell him brb
angelgirl12yo (3:10:47 PM):  I thought I would look at the pics to get ideas and then go take them
sassyangelgoddess (3:11:32 PM):  oh ok.
angelgirl12yo (3:13:03 PM):  nothing yet but probably soon
sassyangelgoddess (3:15:32 PM):  cool

Id. at 8-12.

The next day, December 15, 2002, Agent Waters as "angelgirl12yo" and

"caspercock" conducted a second private online chat during which "caspercock"

said his name was Tim Lofthouse.  Agent Waters subsequently determined that

Tim Lofthouse was a known alias for Wales. Two days later, on December 17,

2002, Agent Waters and "caspercock" had a third online chat in which the agent,

as "angelgirl12yo," indicated she would be at a shopping mall in Casper in the

near future and would like to give "caspercock" the pictures she had taken of

herself. "Caspercock" indicated that he would have to work and would be unable

to meet "angelgirl12yo." "Caspercock" stated that he "[is] interested in seeing

them pictures, and being friends with you," and that "[i]f [he] didn't have to work

[he'd] come up there and pick [the pictures] up." Id. at 14-15. That was the last

online conversation between Agent Waters and "caspercock" or

"sassyangelgoddess."

A state arrest warrant was issued for Wales, although Agent Waters did not

know where Wales lived and was therefore unable to arrest him.[1]  On July 1,

2003, Agent Waters received a phone call from Wyoming probation agent Aaron

Fortin, who was supervising Wales' probation following his guilty plea to third

degree sexual assault in violation of Wyoming state law, and had learned that

Waters was looking for Wales. Fortin told Waters that Wales had admitted using

a computer at the public library to access the Internet. Waters then arrested

---

[1]Agent Waters testified that he checked the criminal history of Tim
Lofthouse and "found records consistent with Mr. Lofthouse as an alias or other
known name for Mr. Wales." R. Vol. 4 at 63. Further investigation revealed a
computer profile "tim_wales2002." Id. at 66. Despite that information, Waters
was unable to physically locate Wales at that time.

Wales in Casper. Wales admitted he had looked at images of child pornography

on the Internet because they aroused him, that he "sometimes" masturbated while

viewing the images, and that he used the Yahoo profiles "caspercock,"

"caspercock 2002" and "sassyangelgoddess." He further admitted that he would

arrange to meet underage girls but then would go do something else instead of

meeting the girls.

Wales waived his right to a jury trial, and the case was tried to the court on

November 14, 2003. The government's sole witness was Agent Waters. Wales

elected not to submit any evidence. Both the government and Wales filed written

closing arguments to the court. Wales' defense was that he had not taken the

necessary "substantial step" to complete an attempt as was charged in the

indictment. Wales also argued that he had abandoned his attempt.

The court found Wales guilty of both counts and issued its "Findings of

Fact, Conclusions of Law and Order" (hereinafter "Order"). The court found that

the government had established beyond a reasonable doubt that Wales had

violated 18 U.S.C. §§ 2422(b) and 2251(a) and (d). The court also rejected

Wales' abandonment defense, finding that, assuming that abandonment is a

defense to an attempt crime, he failed to demonstrate that he had in fact

abandoned or renounced his attempts.[2]  The court further determined that Wales

had failed to establish that he had abandoned or renounced his attempts under the

definition of renunciation contained in the Model Penal Code § 5.01 (1985).[3]


## DISCUSSION

As indicated, Wales was convicted of attempted child sexual exploitation,

in violation of 18 U.S.C. § 2251(a) and (d),[4] and attempting to entice or persuade

---

[2]The district court stated, "There is no proof of a renunciation of the intent
to commit the crimes and the defense of abandonment, if it applies to an attempt,
fails."  Order at 18, R. Vol. 1 at tab 23.

[3]The court did not explicitly hold that the Model Penal Code's approach to
renunciation of an attempt even applies.  Indeed, the court quoted the Sixth
Circuit decision rejecting that approach.  Order at 21-22 (quoting United States v.
Shelton, 30 F.3d 702, 706 (6th Cir. 1994)).  Thus, the district court appeared to
conclude that, even assuming the Model Penal Code approach permitting
abandonment or renunciation as a defense to an attempt crime was available to
Wales, he failed to present sufficient evidence to satisfy its definition of
renunciation or abandonment.

[4]Section 2251 provides in pertinent part:

   (a) Any person who . . . persuades, induces, entices . . . any
   minor to engage in . . . any sexually explicit conduct for the purpose
   of producing any visual depiction of such conduct, shall be punished
   . . . if such person knows or has reason to know that such visual
   depiction will be transported in interstate or foreign commerce or
   mailed, if that visual depiction was produced using materials that
   have been mailed, shipped, or transported in interstate or foreign
   commerce by any means, including by computer . . . .

   (d) Any individual who violates, or attempts or conspires to
                                                    (continued...)

-11-

a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b).[5]

"To prove attempt, the government had to show that [Wales] took a 'substantial

step' towards the commission of the ultimate crime, and that such step was more

than mere preparation." United States v. Munro, 394 F.3d 865, 869 (10th Cir.

2005). Wales argues the evidence was insufficient to support his convictions for

attempt, because the government failed to show that he took the requisite

"substantial step."[6] We review *de novo* sufficiency of the evidence claims,

viewing all evidence in the light most favorable to the party prevailing below, in

this case the government. Id. "Ultimately, we must determine whether the

evidence and all reasonable inferences drawn therefrom could allow a reasonable

jury to find [Wales] guilty beyond a reasonable doubt." Id. "Whether a

---

[4](...continued)
violate, this section shall be . . . imprisoned . . . .

18 U.S.C. §§ 2251(a), (d).

[5]Section 2422(b) provides in pertinent part:

(b) Whoever, using the mail or any facility or means of interstate or
foreign commerce . . . knowingly persuades, induces, entices . . . any
individual who has not attained the age of 18 years, to engage in
prostitution or any sexual activity for which any person can be
charged with a criminal offense, or attempts to do so, shall be . . .
imprisoned . . . .

18 U.S.C. § 2422(b).

[6]Wales does not challenge the interstate nexus element of the charges
against him.

defendant's conduct amounts to a substantial step necessarily depends on the facts of each case." United States v. Ramirez, 348 F.3d 1175, 1180 (10th Cir. 2003) (further quotation omitted).

After carefully reviewing the record, we conclude that there was ample evidence that Wales took a substantial step towards commission of the substantive offenses of sexual exploitation of a child and enticing a minor to engage in illegal sexual activity. As we have stated previously:

> The "substantial step" required to establish an attempt must be something beyond mere preparation. It must be an act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime. A substantial step is an appreciable fragment of a crime and an action of such substantiality that, unless frustrated, the crime would have occurred. The step must be strongly corroborative of the firmness of the defendant's criminal intent and must unequivocally mark the defendant's acts as criminal. It should evidence commitment to the criminal venture.

Id. (quoting United States v. Smith, 264 F.3d 1012, 1016 (10th Cir. 2001)).

We agree with the government that Wales violated section 2422(b) (attempting to entice a minor to engage in illegal sexual activity) when he attempted to persuade "angelgirl12yo," a person whom he clearly believed was a twelve-year-old girl, to "[t]ake pictures of your pussy for me . . . [p]ictures of you fingering yourself." Appellee's App. at 6.[7] As the district court succinctly

---

[7]Section 2422(b) criminalizes the attempt to persuade a minor to engage in
(continued...)

-13-

summarized the evidence, "[t]hrough the medium of the chat room Mr. Wales

used flattery, highly charged sexual images, and a false female persona in his

quest to obtain images of AngelGirl12yo engaging in masturbation with the

possibility that an illicit meeting might occur at a later occasion." Order at 10.

The district court further explained:

> Believing that he was communicating with a twelve year old female, the defendant made use of female persona to influence the target and answer any concerns. He exhibited his genitalia by means of the web camera as part of the process to overcome any resistance to participation in an unlawful and explicit sexual display by the young target. Although the creation of the chat personas for caspercock and sassyangelgoddess are arguably preparation, the defendant went further and employed them in the context of seeking to influence conduct on the part of another person. He sent pornographic images . . . to demonstrate to angelgirl12yo the poses that he wanted from her. This constitutes more than mere preparation, but represents criminal conduct with the target.

Order at 16.

Additionally, Wales first brought up the subject of pictures, sent to

"angelgirl12yo" samples of the kinds of pictures he wanted her to create, and,

through the false female persona "sassyangelgoddess," made suggestions to

enable "angelgirl12yo" to improve the quality of the pictures and generally

---

[7](...continued)
"sexual activity for which any person can be charged with a criminal offense." 18
U.S.C. § 2422(b). The indictment alleged, and the district court found, that
Wales' attempt to persuade "angelgirl12yo" to create photographs of herself
masturbating constitutes sexual exploitation of a child, in violation of Wyo. Stat.
Ann. § 6-4-303(b)(i).

encouraged "angelgirl12yo" to continue the online "relationship" with "caspercock."  Indeed, the record supports the inference that Wales believed that "angelgirl12yo" had actually taken the photographs.[8]

There is accordingly sufficient evidence to uphold Wales' conviction under section 2422(b).  For the same reasons, there is substantial evidence supporting Wales' conviction beyond a reasonable doubt for violating section 2251(a) and (d), which criminalize attempting to entice a minor to engage in "sexually explicit conduct" for the purpose of producing a photograph of that conduct.

Wales next argues that, even assuming he had taken substantial steps and therefore completed the crimes of attempting to violate sections 2251 (a) and (d) and 2422(b), his "voluntary cessation of contact constituted renunciation and abandonment of his criminal purpose."  Appellant's Op. Br. at 8.  He concedes that neither this circuit nor any other circuit to have addressed the issue has held that abandonment or renunciation may constitute a defense to the completed crime

---

[8]Of course, no such pictures were in fact taken, nor could they have been, inasmuch as "angelgirl12yo" was a fictitious person.  That does not minimize Wales' culpability for attempting to entice a minor into creating the illicit photographs.  Indeed, the government charged Wales with attempt because there was, in fact, no minor involved at all.  See United States v. Johnson, 376 F.3d 689, 694 (7th Cir. 2004) ("Because it was factually impossible for [defendant] to complete the offense, he can only be subject to prosecution for an attempt to manufacture child pornography."); United States v. Murrell, 368 F.3d 1283, 1286 (11th Cir.)("[Defendant] was convicted for attempt under the statute because there was no actual minor involved who could have been influenced."), cert. denied, 125 S. Ct. 439 (2004).

of attempt, but he urges us to do so for the first time.[9] We need not decide

whether to adopt that defense, because Wales has failed to establish entitlement to

that defense were it available to him.

The district court found that, even assuming the defense was applicable,

Wales failed to demonstrate that he had in fact abandoned or renunciated his

criminal purpose. The record amply supports the district court's factual findings.

Although communications ceased between Wales and "angelgirl12yo," Wales' last

online conversations do not indicate a complete abandonment and renunciation.

Rather, they suggest a continued interest in the pictures he believed had been

taken, as well as a continued desire to "be friends." Further, as the district court

found, Wales' evident reluctance to actually meet "angelgirl12yo" is equally

suggestive of a fear that he would be caught as of a renunciation of his criminal

purpose. Wales has failed to demonstrate that his conduct reveals complete and

voluntary abandonment.

---

[9]"American courts have historically divided over whether renunciation or abandonment of an attempt, after the defendant's actions have progressed far enough to establish liability, can ever constitute a defense." United States v. Crowley, 318 F.3d 401, 410 (2d Cir. 2003) (citing Model Penal Code § 5.01 cmt. 8, at 356-58 & nn.271-72 (1985) (collecting cases)). However, as the Second Circuit acknowledged, "[t]he only . . . circuits that have formally addressed the question have rejected the defense as a matter of federal law." Id. at 411 (citing United States v. Shelton, 30 F.3d 702, 706 (6th Cir. 1994); United States v. Bussey, 507 F.2d 1096, 1098 (9th Cir. 1974)).

## CONCLUSION

For the foregoing reasons, Wales' conviction is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge